McIlvaine, J.
1. We find no error in the overruling of the motion to make the second amended petition definite and certain. The natui’e of the charge contained therein is sufficiently apparent. The petition contains, no doubt, much irrelevant matter that might have been stricken out, but no objection was made by motion to strike out; which is the only way of reaching such matter.
2. It is also assigned for error, that on the hearing of the motion to make the second amended petition definite and certain, the plaintiff below was permitted by the court, against the objection of the defendant, to amend, by inserting in the petition an allegation that the proceeds of her husband’s labor had formerly been applied to her support, without subsequent verification.
The petition containing the averment referred to, appears *109 in the record properly verified. It is true, the clerk entered upon the journal of the court the fact as claimed by plaintiff in error, but the only proper mode of saving such rulings upon the record is by bill of exceptions.
The practice of mutilating pleadings by striking out or inserting new matter by way of amendment, must be condemned ; but in this case, even if the question had been properly saved, it would not afford ground for reversal, as it is clear the defendant was not prejudiced by the alteration, for the reason that the amendment was immaterial and unnecessary. Before the alteration, the petition contained a statement that the plaintiff was dependent upon the labor of her husband for her support, which certainly was a sufficient predicate for an averment of injury by being deprived of such means of support.
But quere — whether it was necessary to aver that she was dependent upon his labor for her support ? .
3. The overruling of the demurrer to the second amended petition is also assigned for error.
The demurrer specifies these grounds of objection:
1st. That several causes of action are improperly joined.
2d. That the plaintiff has no legal capacity to sue; and
3d. That the petition does no,t state facts sufficient to constitute a cause of action.
As to the first objection. There is, in fact, but one cause of action stated in the petition. The action is brought under the seventh section (original), of the act of May 1, 1854, (S. & C. 1432), entitled “ An act to provide against the evils resulting from the sale of intoxicating liquors in the State of Ohio,” to recover damages for injuries sustained by the plaintiff, as the wife of Zimri Hosier, in consequence of his intoxication caused by the defendant.
Said section reads as follows : “ That every wife, child, parent, guardian, employer or other person, who shall be injured in person or property or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, such wife, child, parent, guardian, employer or other person shall have a right of *110 action, in his or her own name, against any person who shall, by selling intoxicating liquors contrary to this act, have caused the intoxication of such person, for all damages actually sustained, as well as exemplary damages,” &c.
As to the second objection taken by the demurrer. It is claimed that the plaintiff below had no legal capacity to sue: “ 1st, because the statute does not provide that the right of action given to a “ wife” shall survive to her as a widow. And 2d, because, the statute does not vest in the wife any interest or property, but simply a naked right of action.”
It may be conceded that this statute, being in its nature penal, and providing a remedy unknown to the common law, must be strictly construed, and therefore, no person can maintain an action under its provisions to whom a right of action is not given by its terms. .
The term “wife” is used to designate a class of persons to whom the right of action is given. The plaintiff was the wife of Zimri Hosier at the time the defendant caused his intoxication, and at the time the injuries complained of were sustained. The right of action then vested in her, and having vested, the statute did not divest it upon the death of her husband ; nor does it abate upon common law principles. The husband had no interest in it, and no control over it. The right of action vested in her, to be prosecuted in her own name and for her sole use. She did not lose her identity by the death of her husband. True, the relation of wife closed, but that relation, although essential, by the terms of the statute, to the inception of the right of action, is not necessary in the prosecution of the remedy. The plaintiff does not sue because she is the widow of Zimri Hosier, but because she was his wife at the time she was injured. The term “ employer” is used to designate another class of persons to whom a right of action is given by the terms of this statute. If the right of action vested in a' wife abates upon the dea,th of her husband, because the relation of wife no longer exists, I take it, that an employer cannot sue under this statute after the relation of master *111 and servant has ceased. Strict construction does not lead to such conclusions.
Nor is the right of action given by this statute a mere naked right, as in popular or qui tarn actions. But it is a right to a remedy for a real injury ; a means of recovering actual, personal damages.
In popular actions the right to sue is given to any person who may first prosecute, not for a personal injury, but for a penalty to which the prosecutor has no claim until suit is commenced. Under this statute the right of action is confined to the persons named, and they cannot recover unless they prove actual injury to their persons, or property, or means of support.
As to the third objection stated in the demurrer. It is sufficient to say, that the statutory grounds of action are all sufficiently stated in the petition.
4. The defendant below moved the court to set aside the verdict and for a new trial, upon the ground that the verdict was contrary to the law and evidence. The overruling this motion is claimed to be error.
The testimony tended to prove, (and it was sufficient for that purpose) that the'plaintiff’s husband, for some time previous to his death, was habitually intoxicated ; that the defendant sold him intoxicating liquors in'violation of the act of May 1, 1864, and thereby caused his intoxication ; that by reason of such intoxication, he (the husband) was rendered incapable of performing his ordinary labor; that the plaintiff was dependent on his labor for support; that the proceeds of his labor had previously been applied for that purpose ; that in consequence of such intoxication the plaintiff was compelled to resort to other resources for the supply of her wants ; that plaintiff was reduced to a state of want, although the husband continued to furnish a portion of her means of living, from money received on the sale of his property.
The plaintiff on the trial disclaimed any damage resulting to her from the death of her husband, and also for any injury *112 to her person or her property, and relied solely upon the claim that she had been injured in her means of support.
Upon this state of facts two objections are made by plaintiff in error: 1st. That the phrase “means of support,” as used in this statute, is too vague to receive judicial construction ; and 2nd. That if the meaning- of this phrase can be ascertained, still, the plaintiff was not injured in her means of support.
This phrase was in common use at the time and long before the passage of this statute. It then was and still is as well understood as most words and phrases in the English language. It is commonly used in the plural form, but often in a singular sense. In its general sense it embraces all those resources from which the necessaries and comforts of living are or may be supplied, such as lands, goods, salaries, wages or other sources of income. In its limited sense, it signifies any resource from which the wants of life may be supplied.
We are not called upon in this case to determine the full extent and scope of its meaning, but only to ascertain whether the wages or proceeds of ordinary labor is a “means of support” within the meaning of the statute. And of this proposition we entertain no doubt. See Duroy v. Blinn, 11 Ohio, St. 331.
Ordinary labor being a means of support, the next question is, whether the labor of the husband, or its proceeds, can be regarded as the wife's means of support.
A husband is morally and legally bound to supply his wife with the necessaries and comforts of life. If he has no other resource, it is his duty to contribute his labor and its proceeds to her support. And the wife has a corresponding right to be maintained and supplied, and to that end she has an interest in all her husband’s resources. It is upon this principle that alimony is decreed to a wife out of her husband’s estate, or charged upon him personally. A wife then has an interest in the labor of her husband, and in its proceeds, and especially when that labor is necessary for her support. If she has an interest in her husband’s *113 labor and its proceeds as a means of support, she has an interest also in his capacity to labor. Capacity to labor is a means of support; and any deprivation of her rights or interest in the proceeds of his labor, or his capacity to labor, is an injury to her in her means of support. This must be so, especially if she be dependent upon such labor for her living in whole or in part.
Nor is it an answer to say, that because the common law gave her no remedy for the wrongful deprivation of her rights in such a case, that, therefore, she was not injured. Her injury was none the less without than it would have been with a remedy. It is not true that the common law gave a remedy for every wrong or injury.
5. It is further objected that the court erred in the charge as given to the jury, and in refusing to charge as requested.
Without referring specially to the charge as given, or to the requests refused, it will suffice to state the rules by which the objections urged must be determined against the plaintiff in error :
1st. The omission of a court, in its charge to the jury, to define and explain doubtful words or phrases contained in a statute upon which the action is founded, does not constitute a ground for reversal, unless such definition or explanation was requested by the party claiming to have been prejudiced thereby.
2d. Nor will a verdict be disturbed because the court charged the jury upon general propositions of law not involved in the issue, if it appear from the whole charge that the jury could not have been misled thereby.
3d. Whatever may be the rules of the common law as to the state of facts necessary to justify the assessment of exemplary damages, it is clear to our minds that exemplary damages may be recovered in any action brought under this section, in which the evidence shows a right to recover actual damages. The amount of such damages is left to the sound discretion of the jury, subject tobe controlled by the court when such discretion is abused. In actions under this statute the jury, in the exercise of its discretion as to *114 exemplary damages, ought to consider all the circumstances properly before them tending to aggravate or mitigate the conduct of the wrongdoer.
We find no error in the charges given, or in refusing the charges requested.
The whole amount of damages awarded in this case was $200.00. We cannot say that this amount was excessive.
Judgment affirmed.
Soott, C. J., and Welch, White and Day, JJ., concurred.